```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
TODD BRANHAM,

                    Petitioner,            MEMORANDUM AND ORDER
          - against -
                                           10 Civ. 3074 (NRB)
WILLIAM LEE, Superintendent,
Green Haven Correctional Facility,

                    Defendant.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Petitioner Todd Branham brings this <u>pro se</u> petition for a writ of habeas corpus pursuant to U.S.C. § 2254, challenging his June 8, 2006 conviction following a jury trial in New York State Supreme Court, Bronx County, for Murder in the Second Degree under NYPL § 125.25(3). Petitioner was sentenced to an indeterminate term of imprisonment of twenty-five years to life.

For the reasons set forth below, the petition is denied.

<u>BACKGROUND</u>[1]

I.  **Events in Question**

On May 8, 2004, Cardell Speight, an acquaintance of petitioner, telephoned taxi driver Alassane Thiam and solicited Thiam's services. (Tr. 41.) Thiam, who knew petitioner as "T," had petitioner's number in his cell phone and had driven him about ten or thirteen times in the past. (Tr. 45-46.) Thiam

---

[1] Unless otherwise noted, all facts are drawn from the trial transcript ("Tr.") or the parties' submission in this proceeding.

1

collected Speight, Yusuff Russell, and petitioner at 93rd Street and First Avenue in Manhattan in his Ford Expedition, and Speight directed the taxi to West 4th Street to pick up three women, Loreene Sebbane, Sophia Rosado, and Tiffany Simmons. (Tr. 48.) After the taxi picked up the women, Thiam drove to the Capri Whitestone Motel in Bronx County, arriving there around 2 A.M. (Tr. 49.) Thiam stayed in his taxi and watched a movie, but everyone else left the taxi and entered the lobby. (Tr. 49-50.)

A short time later, Anthony Lowe came outside from the lobby of the motel. (Tr. 50.) According to Thiam, petitioner was talking to Lowe "like he knew him" and standing "a little apart" from him. (Tr. 50-51.) Thiam testified that Speight grabbed Lowe's chain with both of his hands and Russell took hold of his arm. (Tr. 51.) Thiam testified that petitioner then walked up behind Lowe, standing about eighteen inches behind him and somewhat to the right of him, pulled out a gun, and shot him in the back. (Tr. 51.) Afterwards, Speight entered the taxi and sat in the front seat, holding the decedent's jewelry. Thiam testified that Speight was holding his stomach, and then exclaimed "T, you shot me." Thiam also saw blood on Speight's shirt. (Tr. 54-56.)

The three women whom the taxi had picked up were also present at the time of the attack. Prior to the attack, all three women had returned to back seat of the taxi. (Tr. 146.)

2

Rosado testified that she saw petitioner, Speight, and Russell encircle Lowe. She further testified that Speight began to argue with Lowe and slammed him on the taxi, a couple of inches away from her. Speight, face to face with Lowe, pulled off Lowe's chain with two hands. (Tr. 322-323.) Rosado then heard a gunshot, which sounded like it came from the right beneath the car, where petitioner was standing. (Tr. 323.) Sebbane also saw petitioner and his two co-perpetrators surround Lowe with petitioner on the right, Russell on the left, and Speight in the middle. (Tr. 147-148.) Sebbane testified that after Russell punched Lowe in the head, she heard an explosion from the right side. (Tr. 148-149.) Simmons, the third of the three women, had covered herself with her jacket and did not see the events transpire, but she did hear a shot ring out. (Tr. 167.)

After the shooting, petitioner, Speight, and Russell jumped back into the taxi. The three women and Thiam were already in the car. Petitioner allegedly told Thiam to drive and leave the scene, and Thiam felt a gun against his head. (Tr. 61.) Like Thiam, Simmons testified that Speight looked at petitioner, and said "T [or] Todd, you shot me." (Tr. 173.) Simmons heard petitioner apologize. (Tr. 173.) At some point, Speight removed his bloodied shirt, extracted a used slug from his stomach area, and threw the projectile out the car window. (Tr. 174.) Thiam drove the taxi to 86th Street in Manhattan, and everybody except

3

for petitioner exited. Petitioner then allegedly warned Thiam: "[Do not] say anything. You don't know nothing. We know where you are. Don't say anything to nobody." (Tr. 62-62A.) Petitioner also allegedly stated that he knew where Thiam worked, and that if Thiam said anything, petitioner would come after him. (Tr. 62-62A.)

Speight was arrested in New Jersey and had a loaded and operable Colt .357 Magnum revolver on his bed, which Thiam later identified at trial as looking like the gun petitioner used to kill Lowe. Speight also had a "large amount of bullets" and, inside his wallet, two pawn tickets that were later redeemed for Lowe's gold chain, which Thiam later identified at trial as the chain Speight pulled during the crime. (Tr. 55.) Petitioner was arrested on May 27, 2004. On May 28, 2004, Thiam identified petitioner at a police lineup. (Tr. 71.)

## II. Relevant Trial Court Rulings

### A. Russell's Declaration Against Penal Interest

Before Rosado testified at trial, the district attorney moved in limine to preclude defense counsel from eliciting from Rosado a statement that had been made by Russell to Rosado on the night of the crime. In her handwritten statement to the police, Rosado wrote that she had asked Russell why he did "that," to which Russell replied, "I feel like since I got shot a couple of times (sic), people should know my pain." The

4

district attorney argued that the statement was inadmissible because it was neither an admission nor a declaration against penal interest. The trial court ruled that the statement was inadmissible because the declarant was not unavailable and there were no supporting circumstances to render the statement trustworthy. (Tr. 310.)

**B. Speight's Excited Utterance**

Before Thiam testified at trial, defense counsel objected to the district attorney's plan to introduce testimony that Speight had said, "T, you shot me." Defense counsel objected on the ground that there was no foundation, and that there was no evidence that Speight had actually been shot. The trial court ruled that the statement was an "excited utterance" and therefore was admissible. (Tr. 171.)

**III. Post Conviction Proceedings**

In August 2008, petitioner, represented by the Legal Aid Society, perfected his appeal to the Appellate Division, First Department. In his brief, petitioner claimed that: (1) he was deprived of Due Process and his right to present a defense by the trial court's refusal to admit Russell's statement to Rosado as a declaration against penal interest; and (2) his state constitutional confrontation rights were violated by the introduction of Speight's excited utterance.

On February 19, 2009, the Appellate Division unanimously affirmed petitioner's judgment of conviction. The court held, on state law grounds, that the trial court properly exercised its discretion in precluding petitioner from introducing evidence of Russell's alleged declaration against penal interest, and that the trial court also properly allowed the Government to introduce evidence of Speight's excited utterance.

On February 23, 2009, petitioner sought leave to appeal to the New York State Court of Appeals "based on all the issues raised in his Appellate Division brief." On April 23, 2009, the Court of Appeals denied petitioner's application seeking leave to appeal.

Petitioner filed his petition for a writ of habeas corpus on April 12, 2010. The petition asserts both grounds for relief asserted in the appeal to the Appellate Division, as well as the claim that the admission of Speight's excited utterance violated petitioner's Sixth Amendment right of confrontation and Fourteenth Amendment rights of due process and equal protection.

## DISCUSSION

I. **Standard of Review**

   A. **Exhaustion**

Before a federal court may grant habeas relief, a petitioner must exhaust his state remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This requirement ensures

6

that "state prisoners give state courts a fair opportunity to act on their claims." Id. at 844. Simply appealing to the state courts is not enough to provide them with the necessary "opportunity" – the "state prisoner [must] present the state courts with the same claim he urges upon the federal courts." Picard v. Connor, 404 U.S. 270, 276 (1971). However, this is not to suggest that the petitioner must cite "book and verse of the federal constitution." Id. at 278. Instead, the petitioner can inform the state court of his claim if he, or the state, relies on "constitutional precedent." Daye v. Attorney General, 696 F.2d 186, 192 (2d Cir. 1982).

### B. Deference to State Courts

In considering petitions for habeas relief, we grant considerable deference to the state courts' prior determinations of both law and fact. See Uttecht v. Brown, 551 U.S. 1, 9-10, (2007). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a claim has been adjudicated on the merits in state court, habeas relief may be granted only if the state court decision was either (a) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (b) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court either (a) "applies a rule that contradicts the governing law set forth in [a Supreme Court] case[,]" or (b) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

A state court decision involves an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the particular facts of a prisoner's case." Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)) (alternations omitted). In order for habeas relief to be granted on this second ground, the state court's application of clearly established federal law must be "unreasonable," not merely "incorrect or erroneous." Williams, 529 U.S. at 410.

This threshold is difficult to meet because state court findings of fact are presumed correct and can only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (explaining

8

that state factual determinations must be "objectively unreasonable" in light of the record in order to be rebutted by a federal court); Whitaker v. Meachum, 123 F.3d 714, 715 n.1 (2d Cir. 1997) (explaining that a state court's factual determinations are entitled to a "presumption of correctness" on federal collateral review unless those findings are not "fairly supported by the record").

## II. Petitioner's Claims for Relief

### A. Rosado's Purported Declaration Against Penal Interest

Petitioner claims that the trial court deprived him of due process of law by refusing to admit Russell's purported declaration against penal interest as reported in Rosado's handwritten statement to the police.

The burden on a petitioner challenging an evidentiary decision is a heavy one. Federal habeas courts are not to "reexamine state-court determinations on state-law questions" and are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991). Moreover, the Supreme Court has expressed reluctance to "impose constitutional constraints on ordinary evidentiary rulings by state courts." Crane v. Kentucky, 476 U.S. 683, 689 (1986). Even erroneous evidentiary rulings warrant habeas relief only if they rise to the level of constitutional error by rendering the trial fundamentally

unfair. See Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988).[2]

The Appellate Division held that Russell's purported statement did not meet the unavailability requirement for admission of a declaration against interest. See People v. Branham 59 A.D.3d 272, 273, 873 N.Y.S.2d 301 (App. Div., 1st Dep't. 2009). We agree with the Appellate Division's determination. Under New York law, to admit a statement as a declaration against penal interest, "the declarant must be unavailable as a witness at trial." People v Settles, 46 N.Y.2d 154, 167 (N.Y. 1978). Here, Russell had agreed to testify for the prosecution and never provided any indication that he would invoke his Fifth Amendment right against self-incrimination. Petitioner's argument that Russell was "practically unavailable" because he was the prosecution's witness is entirely without merit. As noted by the Appellate Division, "the prospect that a

---

[2] The standard for fundamental fairness is whether the evidence in question, when viewed objectively in light of the entire record before the jury, was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short, it must have been "crucial, critical, [and] highly significant." See Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)(quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir. 1982)). In this case, although we rule that the trial court did not err in its evidentiary rulings, we also note that none of the evidentiary rulings which petitioner claims resulted in a trial that lacked fundamental fairness given the lack of reliability of the statements and the multitude of evidence that was present against petitioner.

witness's testimony would be damaging does not satisfy the requirement of unavailability." See Branham 59 A.D.3d at 273.[3]

## B. Exclusion of Speight's Excited Utterance

Petitioner's remaining claim concerns the introduction of Speight's purported statement in the taxi that "T [or Todd] you shot me!" Petitioner claims that the admission of the statement violated his federal constitutional right of confrontation under the Sixth Amendment.

### 1. Exhaustion

As noted previously, petitioner need not cite the Constitution "book and verse" in order to inform the state courts of his federal claim. Picard, 404 U.S. at 278. Petitioner need only have informed the state courts of the claim he raises before the federal court. See id. at 276; see also Rose v. Lundy, 455 U.S. 509, 518 (1982); Daye, 696 F.2d at 191 (1982). As noted by the Second Circuit in Daye, a petitioner can inform the state court of his claim by citing "constitutional precedent," which is not limited to federal cases, but encompasses state cases that "employ[] pertinent constitutional analysis." Daye, 696 F.2d at 192, 194.

---

[3] Petitioner also argues that this evidence would have provided him of the ability to present an affirmative defense. This is not the case. As the Appellate Division noted, "[t]o establish the affirmative defense to felony murder set forth in Penal Law § 125.25(3), defendant would have had to prove by a preponderance of the evidence that he did not commit the homicidal act, as well as proving a series of other elements." Branham, 59 A.D.3d at 274. Given the overwhelming evidence of petitioner's guilt, there is no reason to believe that admission of this statement would have allowed petitioner to satisfy his burden in presenting an affirmative defense. See id.

11

In his brief on appeal to the Appellate Division, petitioner did not cite any federal cases, but he did rely on two state court cases - People v. Roman, 212 A.D.2d 390, 622 N.Y.S.2d 47 (App. Div., 1st Dep't. 1995) and People v. Persico, 157 A.D.2d 339, 556 N.Y.S.2d 262 (App. Div., 1st Dep't. 1990) – that cite to federal precedents and discuss the parameters of the Sixth Amendment's Confrontation Clause. Because petitioner cited state cases employing "constitutional analysis," we hold that he sufficiently exhausted his claim before the state courts and the claim should be considered on the merits.

### 2. Sixth Amendment Confrontation Clause Analysis[4]

The Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53–54 (2004). In Crawford, the Supreme Court did not precisely define the meaning of "testimonial," but it did note that both the historical background and text of the Confrontation Clause indicate that "the principal evil at which [it] was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused." Id. at 50. According to the Court, the

---

[4] Petitioner's claim that the admission of the excited utterance violated his rights under the New York State Constitution is non-cognizable on review of a habeas corpus petition in federal court.

12

Sixth Amendment and, presumably the term testimonial as well, "must be interpreted with this focus in mind." Id. Consistent with that approach, the Court suggested that an "off-hand, overheard remark" would not be testimonial under the Sixth Amendment because "it bears little resemblance to the civil-law abuses the Confrontation Clause targeted." Id. at 51. Along the same lines, the Court indicated that a statement produced through the "[i]nvolvement of government officers" and with an "eye towards trial" is testimonial because it "presents [a] unique potential for prosecutorial abuse - a fact borne out time and again through a history with which the Framers were keenly familiar." Id. at 56 n. 7.

Statements properly classified as excited utterances are an archetype of the off-hand, non-testimonial statements that do not implicate the Confrontation Clause. See United States v. Harper, No. 05-CR-6068L, 2009 WL 140125, at *4 (W.D.N.Y. Jan. 20, 1999) ("Statements admitted as excited utterances . . . are nontestimonial and thus do not implicate the Confrontation Clause."); Rivera v. Ercole, No. 05 Civ. 9411 (AKH), 2007 WL 1988147 (S.D.N.Y. July 6, 2007) ("Excited utterances, generally, are not testimonial."); see also Michigan v. Bryant, 131 S.Ct. 1143, 1157 (2011) (stating that the logic justifying the excited utterance exception to the hearsay rule is consistent with the

rationale for treating statements made in the course of an emergency as non-testimonial).

Speight's statement, right after the shooting had occurred and while perpetrators were leaving the scene of the crime, was properly treated by the trial court as an excited utterance.[5] Regardless of this classification, however, the statement could not conceivably be considered testimonial. The statement "You shot me!" was certainly not made with an "eye towards trial," but rather was made by one co-perpetrator to another while fleeing the scene of a crime. Accordingly, the admission of this statement did not violate petitioner's Sixth Amendment rights.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). In addition, we certify that any appeal from this

---

[5] Under New York law, "[a]n extrajudicial statement will be admitted under the excited utterance exception to the hearsay rule when it relates to a startling event and is made while the declarant remains under the stress of excitement caused by the startling event." People v. Gantt, 48 A.D.3d 59, 63, 848 N.Y.S.2d 156 (App. Div., 1st Dep't. 2007). Speight's statement clearly meets this criteria, as it was made moments after the declarant was shot and concerned the individual who shot him. Because the statement was properly classified as an excited utterance, its admission also did not violate petitioner's Fourteenth Amendment rights. We further note that regardless of our own judgment on the classification of the statement as an excited utterance, the trial court's decision was an evidentiary ruling on an issue of state law, and thus is entitled to substantial deference on habeas review.

decision would not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

DATED:     New York, New York
           November 28, 2011

                                    /s/ Naomi Reice Buchwald
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:

**Pro Se Petitioner**
Todd Branham, 06 A 3427
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

**Attorney for Government**
Justin J. Braun, Esq.
Office of the District Attorney
Bronx County
198 East 161st Street
Bronx, NY 10451

15